# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **JOY CONKWRIGHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:13-cv-0515** |
| | ) | **Judge Aleta A. Trauger** |
| **v.** | ) | |
| | ) | |
| **NATIONAL ASSOCIATION OF STATE** | ) | |
| **BOARDS OF ACCOUNTANCY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

The defendant has filed a Motion for Summary Judgment (Docket No. 19), to which the plaintiff has filed a Response in opposition (Docket No. 26), and the defendant has filed a Reply (Docket No. 30). For the reasons stated herein, the motion will be granted.

## BACKGROUND

### I. Overview

The plaintiff, Joy Conkwright, worked for the defendant, the National Association of State Boards of Accountancy, Inc. ("NASBA"), from August 2007 until her termination on February 23, 2010. Conkwright worked as a Project Manager and as a Senior Project Manager within NASBA's Project Management Office ("PMO"). It appears that the PMO managed information technology projects involving other departments and groups within NASBA, performing functions that included overseeing, monitoring, and reporting on project budget estimates and expenditures, scheduling and organizing team meetings, and ensuring that projects progressed and were completed within target timelines and within budget. In her Complaint, Conkwright claims that NASBA (1) failed to promote her in 2009 because of her gender, (2)

1

paid her less than similarly situated male employees, (3) sexually harassed her by creating a hostile work environment, and (4) terminated her in retaliation for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

NASBA has moved for summary judgment on all claims. In support of its motion, NASBA has filed (1) a Memorandum of Law (Docket No. 22), (2) the transcripts of the deposition of Conkwright, the deposition of Janice Winslett, and the sworn testimony of John Fields (Docket Nos. 20 and 32),[1] and (3) a Statement of Undisputed Material Facts (Docket No. 21) ("NASBA's SUMF"). In response, Conkwright has filed a Response brief (Docket No. 26), the Declaration of Janice Winslett (Docket No. 26, Attach. No. 1),[2] and a Response to NASBA's SUMF (Docket No. 27). NASBA has filed a Reply (Docket No. 30).

Conkwright does not dispute any facts stated in NASBA's SUMF. Furthermore, Conkwright has not filed a separate statement of disputed material facts under Local Rule 56.01(c). As to substance, Conkwright's brief (1) is silent concerning her pay discrimination claim, and (2) does not acknowledge, let alone rebut, the defendants' arguments concerning the

---

[1] Fields no longer works for NASBA. On December 10, 2014, Fields provided sworn testimony in response to questioning by counsel for NASBA. (*See* Docket No. 20, Attach. No. 22.) Counsel for Conkwright was not present. With respect to NASBA's Rule 56 motion, Conkwright's counsel has not objected to the introduction of Fields' testimony. The court will therefore consider Fields' sworn statement in its analysis under the admissibility standards set forth in Rule 56(c)(4), which govern the admissibility of declarations or affidavits filed in support of a Rule 56 motion. Also, in response to the court's request, NASBA produced the exhibits to Part 2 of Conkwright's deposition at Docket No. 32, which NASBA had omitted from its earlier filing of transcripts at Docket No. 20.

[2] Conkwright's counsel initially filed her Response without any attachments at Docket No. 25. Conkwright refiled her Response with the attached Winslett Declaration at Docket No. 26.

untimeliness of her failure to promote, pay discrimination, and sexual harassment claims. Aside from the Winslett Declaration, Conkwright has not filed any additional factual materials.[3]

## II. <u>Pay Discrimination and Failure to Promote Claims</u>

NASBA contends that Conkwright's pay discrimination and failure to promote claims are untimely and that Conkwright has also abandoned her pay discrimination claim by not addressing it in her Response. Conkwright has not responded to either argument.

First, given that Conkwright did not oppose dismissal of the pay discrimination claim in her Response brief, the court construes Conkwright as abandoning her pay discrimination claim. The claim is subject to dismissal on that basis alone.

Second, the pay discrimination and failure to promote claims are untimely. A Title VII plaintiff must bring suit within ninety days of receiving her right-to-sue letter ("RTS letter") from the EEOC. 42 U.S.C. § 2000e-5(f)(1) (current 2015); *Lockhart v. Holiday Inn Express Southwind*, 531 F. App'x 544, 548 (6th Cir. 2013). Within the Sixth Circuit, there is a rebuttable presumption that "the ninety-day limitations term begins running [] on the fifth day following the EEOC's mailing an RTS notification to the claimant's record residential address, by virtue of a presumption of actual delivery and receipt within that five-day duration." *Graham-Humphreys Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000); *see also Rucker v. Potter*, 215 F. App'x 406, 408 (6th Cir. 2007).[4]

---

[3] The record contains no indication that Conkwright deposed any witnesses in this case.

[4] As explained in *Graham-Humphreys*, "[t]he Sixth Circuit allots two days for postal delivery of a RTS notice beyond the three day period allowed by Federal Rule of Civil Procedure 6(e)." 209 F.3d at 557 n.9.

Here, in October 2009, Conkwright filed her first charge against NASBA with the EEOC (the "First Charge"), alleging gender-based pay discrimination and a claim for failure to promote. On June 24, 2010, the EEOC mailed her a RTS letter concerning the First Charge, which Conkwright believes that she received within four or five days.[5] Conkwright filed this lawsuit on May 28, 2013, more than 1000 days after receiving her RTS letter. The pay discrimination and failure to promote claims are therefore untimely and subject to dismissal.

### III. Facts Concerning Alleged Sexual Harassment

Conkwright claims that Joe Cote, NASBA's Chief Operating Officer ("COO"), made inappropriate comments at NASBA's office Christmas party each year from 2007 through 2009. On March 5, 2010, shortly after her termination, Conkwright filed a second charge with the EEOC (the "Second Charge"), alleging sexual harassment and retaliatory termination for filing her First Charge.

Under 42 U.S.C. § 2000e-5(e)(1), a party claiming discrimination must assert the claim in a charge filed within 300 days of the occurrence. *See Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 386 n.2 (6th Cir. 2009) (noting that plaintiff could not recover for alleged discriminatory acts that took place more than 300 days before the plaintiff filed her EEOC charge). Conkwright's Second Charge, therefore, covered allegedly harassing activity that took place from May 9, 2009 forward (*i.e.*, within 300 days before filing the Second Charge). Conkwright does not assert a continuing violation theory, nor has she responded to NASBA's meritorious

---

[5] Conkwright cannot recall the exact date of receipt, although she testified that she likely received the notice within four or five days of its mailing date. Even if Conkwright could not recall the date of receipt, the court would presume that she received it within five days, and there is no evidence in the record to overcome that presumption. *See Graham-Humphreys*, 209 F.3d at 557.

argument that Title VII's limitations provision bars her from recovering for activity that occurred before May 9, 2009. Therefore, the court finds that the sexual harassment claims premised on the 2007 and 2008 Christmas parties are time-barred and that only harassing activity that took place after May 9, 2009 will be considered. The court accordingly will summarize the facts relating to the 2009 Christmas party, which is the only post-May 9, 2009 incident that Conkwright references as involving sexually harassing conduct.

Conkwright claims that, at the 2009 Christmas party, Cote made offensive comments to the whole group in attendance at the event. First, Cote allegedly commented that co-worker Jan Winslett's breasts bounced when she walked, and that it looked like "butter churning" when they did so. Second, Cote allegedly "called out one of the guys in the licensing bureau," although Conkwright could not recall any additional details about this comment.

## IV. Facts Concerning Alleged Retaliation

In November 2008, Conkwright learned that the PMO Director position would be available, because the existing Director was planning to vacate the position. Conkwright and the PMO's other two Project Managers, John Fields and Tim Berry, all applied and interviewed for the position.[6] In July 2009, NASBA chose to promote Fields to Director of the PMO. Conkwright was displeased and sought to obtain work in another group (*i.e.*, to leave the PMO) for the next several months, apparently without success.

In early August 2009, Conkwright received a performance evaluation from COO Cote. Out of nine categories of evaluation, Conkwright received a "3" (meaning "Exceeds

---

[6] The record is muddled is to which employees were Project Managers or Senior Project Managers at the time. The distinction is not relevant to the court's discussion of the sequence of events relating to the retaliation claim.

Expectations") in three categories (Organization and Planning, Quality of Work, and Knowledge and Skill), a "2" (meaning "Meets Expectations") in five categories (Communications, Quantity of Work, Initiative and Motivation, Dependability, and Meeting Attainable Objectives), and a "1" (meaning "Does Not Meet Expectations") in the category of "Relationship with Others." With respect to the "1" rating, the review indicates that Conkwright's "demeanor can be intimidating," that "when she is displeased, she displays her displeasure on her face and in other ways[,]" that "some staff fear her reactions and find her overly combative," and that "her persistence in trying to resolve an issue or monitor a project progress is often frustrating to other staff[.]" The evaluation suggested, among other things, that she "needs to appreciate more the importance of developing collegial, working relationships with all other staff." Conkwright disagreed with this criticism and, shortly after receiving the evaluation, wrote a memorandum in response to it.

At an unspecified point in October 2009, perhaps on October 6, 2009, Conkwright filed her First Charge.[7] The record contains no indication that NASBA received a copy of this initial charge, and no one at NASBA told her that NASBA (or any individual) had received it.

On October 7, 2009, Fields wrote an email to Conkwright summarizing a previous discussion with Conkwright. Among other items, the email indicated that he would follow up with Conkwright about her job-specific and development objectives.

_____

[7] At deposition, Conkwright testified that she believed that she had filed the charge on October 6, 2009. However, she did not produce (and therefore the record does not contain) a copy of the initial charge or any other document establishing the original charge date. It is not clear to the court why she did not simply ask the EEOC for a copy of the original EEOC to eliminate this ambiguity, particularly where the timing of her initial charge is highly relevant to her retaliation claim.

On October 23, 2009, Conkwright received a "Confidential Job Specific and Development Objectives for 2009-2010 Only" document. The document contains two "Developmental Objectives" for Conkwright, reflecting two areas in which Fields believed she could improve or better her abilities. The document advises Conkwright to focus on "the competency 'informal' which is defined as a competency where, 'Effective performance clearly and articulately conveys information to others in casual or informal situations . . . .'" (Docket No. 26, Ex. 4 to Fields Dep.). With respect to that competency, and in an effort "[t]o achieve a further understanding of reading non-verbal cues of others and interpreting body language accurately," the document advises Conkwright to complete two training programs addressing non-verbal communication. (*Id.*) Conkwright is also advised to focus on "the competency 'Diplomacy' which is defined as a competency where, 'Effective performers work well within the organization's power network,'" including "forming coalitions, catching subtle social nuances . . . and recognizing personal agendas." (*Id.*) The document also directs Conkwright to "hone her skills in organizational diplomacy, especially as it relates to interactions concerning Project Teams and other NASBA functional units," and to complete a training program concerning "the development of good organizational relationships and diplomacy in the workplace." (*Id.*) On the same date, Conkwright also received a separate statement of job responsibilities and duties, which included items concerning effective communication, being "open to providing and accepting constructive feedback," and using "established escalation processes." (Fields Statement, Ex. 5.)

On October 30, 2009, Fields sent an email to Conkwright, reminding her of NASBA's formal escalation process "that needs to be followed when a project has situations that cannot be resolved by the project team . . . . " (Conkwright Dep. Ex. 20.) The email states that

Conkwright had not followed the proper procedures in a particular project, escalating it to a "red" (meaning a project that was "kind of off the tracks") without first consulting with the appropriate personnel.

On November 2, 2009, Conkwright filed an "amended" First Charge with the EEOC, a copy of which is in the record. (Docket No. 20, Ex. 3.) The record contains no evidence as to when NASBA received notice of the First Charge (whether in its initial or amended form). Furthermore, the record contains no evidence establishing when – or if – any particular individual at NASBA became aware that she had filed it.[8]

In a November 18, 2009 email, Fields admonished Conkwright for responding to a co-employee's inquiry using all capital letters. In the email, Fields expresses concern that Conkwright was "not understanding the importance of proper formal/informal writing styles and protocols" and "was choosing to ignore common business practices regarding proper style in written communications." (Fields Statement, Ex. 7.)

On January 20, 2010, Fields received an email from Stacey Douglas, NASBA's Director of Software Development, complaining about Conkwright's conduct on a project with his group, which is referred to in the record as the "Registry/QAS Project." (Fields Statement, Ex. 8.) He complains that Conkwright had, in his view, intentionally violated the established process for obtaining certain project estimates, thereby risking damage to the reputation of the Information Technology group within the company and wasting certain employees' time. Douglas's email concludes by stating that "I am formally complaining about the lost work from my team and the

_____

[8] The record contains no indication that Conkwright conducted discovery concerning NASBA's knowledge of the First Charge. Furthermore, Conkwright has presented no evidence establishing NASBA's actual (or presumptive) knowledge of the charge before her termination, such as an EEOC notice sent to both parties or some other document reflecting service on NASBA.

intentional circumvention of process." Fields forwarded this email to the Human Resources Department.

On January 22, 2010, Fields received an email from Alana Hartley, a Product Manager involved in the Registry/QAS Project, asserting complaints about Conkwright's work on that project. (Field Statement, Ex. 9.) Hartley's email provides specific examples of deficiencies in Conkwright's work. Among other things, Hartley complains about Conkwright's lack of familiarity with a particular methodology relevant to the project, states that Conkwright had made requests that were "simply inconsistent with how the product is being built," complains that Conkwright had insisted on certain "useless" endeavors involving a "very poor use of my time," and indicates that, following her team's most recent meeting with Conkwright, "all team members . . . were frustrated with the project management portion of the meeting." Hartley describes her interactions with Conkwright as "simply becoming too frequent and completely unproductive." Finally, Hartley complained that Conkwright's project management approach "has hindered our progress and has caused a number of team members to deem the project management portion of the meeting as a burden and a waste of time."

On January 25, 2010, Fields received an email from Alfonzo Alexander, a senior management official at NASBA, complaining about Conkwright's work on another project, referred to in the record as the "NASBA Strategic Marketing Project." (Fields Statement, Ex. 11.)[9] Alexander expressed that he was "increasingly disappointed with the service we are getting from Joy Conkwright[.]" Alexander gave specific examples of his frustrations with Conkwright, including instances in which she pressed for unnecessary meetings, pressed for unnecessary

---

[9] In his sworn statement, Fields described Alexander as a "senior management official" at NASBA who likely had the title of "Senior Relationship Manager" at the time he sent this email.

project modifications, unilaterally changed aspects of the project or the associated team meetings without his approval (or in spite of his instructions), and invited (on at least two occasions) over 30 people to a meeting. Alexander expressed that "[t]he issues have made me not want to work with Joy and concerned about working with the PMO on future projects. Her methods seem to slow the process versus help facilitate a more effective process."

On January 26, 2010, Fields sent an email to the Human Resources Department, summarizing both Conkwright's work on the two projects and the reported criticism of that work "by diverse members of the NASBA management team." (Fields Statement, Ex. 13.) The email from Fields attached a memo that, among other things, included excerpts from the recent complaint emails that he had received from Douglas, Hartley, and Alexander.

On February 22, 2010, Fields issued a formal written reprimand to Conkwright. (Fields Statement, Ex. 14.) The reprimand states that, "[o]ver the past few weeks[,] I have received both verbal and written communications from various members of the Registry/QAS and NASBA Strategic Marketing Project Teams. These communications indicate that your actions have been inhibiting the success and progression of the projects." The reprimand provides specific examples of the types of complaints that Fields had received, which essentially tracked the complaints stated in the earlier reports from Hartley, Douglas, and Alexander. The reprimand attaches a formal Performance Improvement Plan ("PIP"), states that "[i]t is imperative that the directives outlined in the plan are fully addressed," and advises Conkwright that "[f]ailing to successfully complete the requirements of the plan by improving your performance in the stated areas will result in further disciplinary action up to and including termination." In most relevant part, the PIP includes the following directive:

> Follow all established procedures, especially as they relate to project estimating. Under no circumstances should Joy informally approach Information Technology (IT) Developers, Business Analysts or System Analysts for the purpose of obtaining project estimates. All communications pertaining to IT personnel's roles, responsibilities or task assignments should occur through the proper communication channels (Project Team Meetings, Project Sponsors or IT Management). *If Joy has questions or needs assistance with obtaining project estimates she should consult with the Project Executive Sponsor or the Director of the PMO.*

(*Id.* (emphasis added).)

On February 23, 2010 (the next day), Conkwright sent three separate memos to the Human Resources Department. In the first memo, entitled "First Response to Displinary [sic] Memo Concerning Strateg [sic] Marketing Project," she defends her actions on the NASBA Strategic Marketing Project, blames any problems on Alexander for not communicating with her, and urges NASBA to include her memo in NASBA's evaluation of Alexander. (Conkwright Dep., Ex. 32.) The memo ends with the following veiled accusation: "Finally, since I have documented a different set of facts, I feel that disciplinary action must have been taken for some other underlying reason than for me scheduling meetings that do not contribute to the overall progress of the project, since I had the written approval to do so, and had requested verbally a change to the so called scheduled meetings in advance."[10] In the second memo, entitled "Second Response to Displinary [sic] Memo Concerning RQAS Project," Conkwright also responds to the criticism leveled against her with respect to the Registry/QAS Marketing Project. (Fields Statement, Ex. 17.) The memo provides notes about various steps in the project and, as best the court can discern, seems to blame other members of the project team for various deficiencies or delays in its implementation. The memo has two paragraphs containing veiled accusations:

---

[10] As the court's summary of the previous reports makes clear, Alexander had complained about Conkwright for multiple reasons, not just her practices with respect to setting team meetings.

15.    Given this brief project history, the project Sponsors may have a level of frustration based on something besides my project management;

19.    Finally, since I have a documented a different set of facts, I feel that disciplinary action must have been taken for some other underlying reason than for me being unwilling to follow and implement Agile [the methodology], for requesting estimation from a developer, and for developing a work in process WBS without team contribution.

In her Response, Conkwright does not adequately explain the substance of these two memos

(which are exceedingly difficult to follow) or their relevance.

Finally, in a third memo to "HR" entitled "GeneralResponse [sic] to Displinary [sic]

Memo February 22, 2010," Conkwright complains as follows:

For approximately two years, I have been harassed at NASBA by a previous manager and executive. I have refrained from taking any action, but have documented occurrences and noted witnesses. In December, 2009, in front of a witness, I tried to express my complaint to John Fields, PMO Director. He told me to shut up, that he did not want to hear about it. I tried again to tell him that I had documented the occurrences and had witnesses. He said he wanted no part of the discussion. He did not advise me to take the matter to NASBA HR. So, this left me with the impression of NASBA's culture.

Since I feel the majority of the circumstances surrounding the disciplinary action are coming from IT, I feel that the harassment and intimidating behavior has escalated to a higher level. The undue stress and discomfort working in this environment has been bad, but now has been made worse. I have avoided as many unpleasant situations as possible in order not to have direct contact to avoid the inappropriate behavior. But, this last action is career affecting to me. If I had known it would get to this level, I would have ignored John's lack of concern and wish not to get involved and reported the 3 incidences to you.

(Conkwright Dep., Ex. 31.) The record contains no documents or testimony concerning

who at HR received this memo, when they received it, or to whom it was disseminated

(and when).

At some point on February 23, 2010, Conkwright also sent a memo to Ed Barnicott,

NASBA Chief Technology Officer. In the memo, she asks Barnicott to intervene on her behalf

because Douglas (who was under Barnicott's supervision) had not communicated with Conkwright concerning a project estimate. The memo directly violated Item No. 4 of the PIP, which advised Conkwright that, if she "has questions or needs assistance with obtaining project estimates she should consult with the Project Executive Sponsor or the Director of the PMO." Conkwright testified at deposition that, notwithstanding the PIP's terms, she was attempting to follow a separate "IT process" that Barnicott had previously outlined to her. The record contains no other testimony or documents concerning this alleged alternative process.

After Conkwright sent the memo to Barnicott, NASBA terminated her for "Immediate violation of [the] Performance Improvement Plan." (Conkwright Dep., Ex. 34.) The Manager of Human Resources and Fields delivered the separation notice to Conkwright.

In support of her response, Conkwright has filed a declaration from a former co-worker, Janice Winslett. The declaration largely consists of inadmissible hearsay or statements not based on personal knowledge. As to potentially admissible statements, Winslett avers that (1) "Joy Conkwright did not display any difficulties in working with others or in communication," (2) Conkwright "remained very professional" after being passed over for promotion in favor of Fields,[11] and (3) in a meeting several weeks after Conkwright's termination, Barnicott and Douglas were asked if they were the reason another employee had left NASBA, to which Douglas stated that he was not responsible for that employee leaving because he had been "too busy 'getting rid of Joy Conkwright,'" and Barnicott laughed.

On March 5, 2010, Conkwright filed her Second Charge, alleging sexual harassment and retaliatory termination. Approximately three years later, Conkwright received a RTS letter from the EEOC (Fields Statement, Ex. 6) and filed this lawsuit on May 28, 2013.

---

[11] These first two statements are necessarily limited to Winslett's personal observations.

<u>**ANALYSIS**</u>

**I.** <u>**Sexual Harassment**</u>

"Illegal discrimination based on sex may be found when a plaintiff establishes that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive environment.'" *Russell v. Univ. of Toledo*, 537 F.3d 596 (6th Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To prove a hostile work environment claim, Conkwright must show that (1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the employer failed to take reasonable care to prevent and correct any sexually harassing behavior. *Russell*, 537 F.3d at 608; *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000); *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011).

In assessing whether conduct is sufficiently severe or pervasive to create a hostile work environment, "[b]oth an objective and subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Bowman*, 220 F.3d at 463. The court must consider the totality of the circumstances when determining whether, objectively, the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. *Id.* In making its assessment, courts may consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere

offensive utterance, and whether it unreasonably interferes with an employee's work performance.  *Id.*

Here, the allegations related to the 2009 Christmas party are insufficient to support a hostile work environment claim.  Of the two comments by Cote, only one relates to sex: the comment about Ms. Winslett's breasts.  Although inappropriate, that comment, standing alone, is not a "severe" form of harassment.  Furthermore, where it only occurred once, it cannot support a finding that the alleged harassment was "pervasive."  The sexual harassment claim will therefore be dismissed.[12]

## II.  Retaliation Claim

### A.  Title VII Retaliation Standard

Title VII forbids an employer from "discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-5(a) (current 2015).  Title VII's anti-retaliation provision "seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms."  *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2009) (internal quotation omitted).

Conkwright seeks to prove her retaliation claim using circumstantial evidence.  A claim for retaliation under Title VII based on circumstantial evidence is governed by the *McDonnell Douglas* burden-shifting framework.  To establish a *prima facie* case of retaliation, the employee

---

[12] Conkwright did not complain to the Human Resources Department about Cote's conduct, which was directed to everyone present at the Christmas parties.  Therefore, it appears to the court that Conkwright also has not established that NASBA should have taken steps to protect her, where she did not follow company procedures to assert a personal grievance.

must show that (1) she engaged in protected activity; (2) the employer knew of the exercise of the protected right; (3) an adverse employment action was subsequently taken against her; and (4) there was a causal connection between the protected activity and the adverse employment action." *Imwalle v. Reliance Med. Prods, Inc.*, 515 F.3d 531, 543 (6th Cir. 2008). Once the plaintiff establishes these elements, the burden of production shifts to the defendant to produce a legitimate, non-retaliatory reason for the adverse action. *Id.*; *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004). If the defendant meets its burden of production, the plaintiff must show by a preponderance of the evidence that the legitimate, non-discriminatory reason offered by the defendant was not its true reason, but instead was a pretext designed to mask retaliation for engaging in the protected activity. At all times, the burden of persuasion remains on the plaintiff to demonstrate that retaliation was the "but-for" cause of the defendant's adverse action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Conkwright contends that she was terminated in retaliation for filing the First Charge. The court will therefore evaluate her claim under that theory of liability.[13]

---

[13] Conkwright does not argue that she was terminated for complaining of sexual harassment in her February 23, 2010 "General Response" memo to "HR." All along, her only theory of liability has been that she was terminated for filing the First Charge several months before she was terminated. (*See* Docket No. 1, Complaint ¶ 9 ("After Ms. Conkwright complained of discrimination to the EEOC and Defendant was notified of same, Ms. Conkwright received repeated disciplinary feedback and was discharged less than three months after filing her charge of discrimination."); Docket No. 10, Initial Case Management Order, at p. 1, Plaintiff's Theory of the Case ("Conkwright originally filed a charge with the EEOC that was investigated in early 2010. *Ms. Conkwright was retaliated against for reporting an issue to the EEOC* by pretextual criticism of her job performance followed by pretextual discipline and termination.") (emphasis added); Docket No. 26, Response to NASBA's Motion for Summary Judgment, at p. 12 ("Plaintiff clearly has a viable claim for retaliation. *She engaged in protected activity with the filing of multiple EEOC claims*. Defendant knew that the complaints had been lodged. Plaintiff was fired. . . . [T]here is sufficient evidence of a causal connection between the termination and

16

## B. *Prima Facie* Case

Conkwright has failed to establish the knowledge and causation elements of her *prima facie* case.

First, although the record reflects that Conkwright filed her First Charge in October or November 2009, the record contains no evidence that anyone at NASBA – let alone the individuals involved in the decision to terminate her – was aware of the charge before Conkwright's termination on February 23, 2010.[14]  Absent evidence that NASBA knew about Conkwright's First Charge before it terminated her, Conkwright's retaliation claim fails.

Second, Conkwright fails to demonstrate the requisite causal connection.  With respect to the causation element, "[t]he burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).  "Temporal proximity always plays a role in establishing a causal connection; its significance depends on the context." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d

_____

the protected activity to create a genuine of material fact . . . .") (emphasis added).)  The record contains no indication that, relative to the February 23, 2010 memo, counsel for Conkwright has advanced an alternative retaliation theory or investigated that potential theory through discovery.  At any rate, the record does not contain evidence establishing that NASBA received the memo before it chose to terminate Conkwright (on the same date as the memo) for violating the PIP, Conkwright has not identified the relevant decisionmakers or established that these decisionmakers were aware of the memo when they chose to terminate her, and Conkwright has not otherwise shown that this February 23, 2010 memo played any role in  her termination.

[14] In ¶ 9 of her Complaint, which is the only paragraph relating to NASBA's knowledge of the First Charge, Conkwright alleged that, "After Ms. Conkwright complained of discrimination to the EEOC and Defendant was notified of same, Ms. Conkwright received repeated disciplinary feedback and was discharged less than three months after filing her charge of discrimination."  In its Answer, NASBA "denied" the allegations in this paragraph.  Conkwright has not identified any evidence showing NASBA's knowledge of the First Charge before her termination.

668, 675 (6th Cir. 2013). "[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)). Ultimately, courts must "look[] at the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010).

Here, Conkwright has failed to satisfy her limited burden to show a causal connection. Conkwright's termination occurred at least three months after she filed the First Charge. Conkwright does not appear to dispute the defendant's contention that, under the circumstances presented, she must produce additional evidence of retaliation beyond the temporal proximity (or lack thereof) between the date she filed her First Charge and the date she was terminated. The record is devoid of any additional evidence of retaliation. Conkwright has not established that any of the decision-makers were aware of her First Charge when they chose to terminate her on February 23, 2010, let alone that the First Charge played any role in NASBA's decision to terminate her. She has not established that anyone who complained about her conduct (Hartley, Alexander, or Douglas) was aware of the First Charge when they emailed Fields to complain about her work. She has not identified any pre-termination records that reference her First Charge or the fact that she had complained about the company to the EEOC. With respect to the comment by Douglas that Winslett allegedly overheard, the comment does not reference Conkwright's EEOC charge, and it does not tend to explain why other individuals in the company (including Hartley and Alexander) had complained about her conduct and performance

18

to Fields.  The court finds insufficient evidence of a causal connection to support a *prima facie* case of retaliation.  Thus, Conkwright's claim fails for this reason as well.

### C.  Pretext

Even if Conkwright could establish a *prima facie* case of retaliation, she has not provided evidence from which a reasonable jury could conclude that the fact that she had filed her First Charge was the "but-for" cause of her termination.

NASBA contends that it terminated Conkwright for violating the PIP.  The factual record supports this position.  Therefore, the court finds that NASBA has met its burden of production. To show that this reason is actually a pretext for retaliation, Conkwright may show that the stated reason (1) had no basis in fact, (2) did not actually motivate the employer's decision, or (3) was insufficient to justify the decision.  *Id.* at 268; *Johnson v. Lockheed Martin Corp.*, -- F. App'x -- , 2015 WL 264498, at *4 (6th Cir. Jan. 22, 2015) (citing *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007)).  Conkwright does not specify which of these theories she believes applies to her claim, although her brief seems to touch on each of them to some degree.

Conkwright contends that criticism of her began after she filed her First Charge, that NASBA terminated her for committing "relatively minor infractions" of company policy (while not terminating Cote for engaging in inappropriate conduct at office Christmas parties), that NASBA had a general culture that "objectified and devalued" women, as evidenced by its failure to promote her in favor a "less qualified male" (Fields), and that Winslett has offered "damning testimony" concerning NASBA's true motivations.  None of these positions withstand scrutiny.

The record demonstrates that Conkwright received a negative performance evaluation concerning her interactions with co-workers in August 2009, well *before* she filed the First Charge.

As to the Fields promotion, Conkwright has not demonstrated why the court should question NASBA's business judgment in promoting Fields in the first place. Furthermore, Conkwright has not shown how NASBA's promotion of Fields – which occurred months before she filed the First Charge – shows that her termination months later, in response to a litany of complaints from her co-workers and company officials in other units, was not legitimate.

The record contains ample evidence that Conkwright was not terminated for committing "relatively minor infractions." Instead, criticism of her conduct escalated over time, came from sources outside the PMO (in addition to concerns expressed by Fields), and related to her core job functions as a Senior Project Manager. In January 2010, at least three different individuals outside the PMO complained about her conduct, detailing numerous instances in which her performance was deficient and explaining that certain units within the company were finding her to be unreasonable, ineffective, and a hindrance to their business operations. Although Conkwright disputed (and continues to dispute) whether the criticisms of her work by other business units were accurate or reasonable, that dispute is beside the point. When a plaintiff challenges the factual basis for an employer's adverse action, the Sixth Circuit applies a modified version of the "honest belief" rule, under which an employer may show that it "honestly held" the proffered reason "where it reasonably relied on the particularized facts that were before it at the time the decision was made." *Seeger v. Cincinnati Bell Tele. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Joostberns v. United Parcel Serv., Inc.*, 166 F. App'x 783 (6th Cir. 2006)). The key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action. *Seeger*, 681 F.3d at 285.

Here, the evidence demonstrates that Fields received criticism from multiple sources within the company about Conkwright's conduct and reported these issues to the Human

Resources Department. The criticisms were specific, detailed, and remarkably consistent, including complaints about Conkwright's refusal (in multiple instances) to follow established escalation processes and chains of communication, her unreasonableness in managing projects, and her tendency to waste employees' time with unnecessary meetings or requests. NASBA placed Conkwright on a PIP with specific instructions, and NASBA warned Conkwright that she could face termination for violating the terms of the PIP. The next day, Conkwright immediately violated a term of the PIP, and NASBA terminated her for it. Conkwright has not provided evidence that genuinely calls into question NASBA's honest belief that Conkwright was not performing her job in compliance with the company's expectations and policies or that Conkwright had violated the PIP the day after she received it.

Finally, Cote is not an appropriate comparator. "When an employee argues that the proffered reason was insufficient to motivate his discharge, he must show by a preponderance of the evidence that other employees, particularly employees not in the protected class, were not fired even though they were engaged in substantially identical conduct to that which the employer contends motivated its discharge of the [the plaintiff]." *Blizzard v. Marion Tech. College*, 698 F.3d 275, 286-87 (6th Cir. 2012). The employee can meet this burden by showing that the comparator was "similarly situated with respect to the severity and frequency of [her] performance errors." *Id.* Conkwright claims that Cote made inappropriate comments at company Christmas parties, not that (1) he received complaints about his job performance similar to the complaints about Conkwright or (2) he was placed on a performance improvement plan but not terminated for violating it. Conkwright makes no attempt to analogize her conduct to Cote's. Indeed, Cote's alleged conduct was not at all similar to Conkwright's conduct, which

involved reports of job-related deficiencies and conflicts with multiple internal departments, not allegedly inappropriate comments at a company function.

Finally, the Winslett Declaration does not create any genuine disputes of material fact concerning pretext. Whatever Winslett's perceptions of Conkwright's work performance, she did not supervise Conkwright, and her affidavit cannot refute the fact that Fields received detailed complaints from Hartley, Alexander, and Douglas about Conkwright's workplace performance. Winslett's conclusory affidavit does not address any of the numerous, specific instances of issues with Conkwright's work that were detailed in the reports that Fields received. Furthermore, the lone comment Winslett claims to have overheard, to the effect that Douglas wanted to "get rid of" Conkwright, does not indicate that Douglas sought to facilitate Conkwright's termination *because she had filed a discrimination charge*, which is the operative issue. Furthermore, that isolated comment does not undermine the legitimacy of Hartley or Alexander's specific complaints about Conkwright, which also precipitated the written reprimand and associated PIP.

Taking all of these considerations into account, the court finds that the record contains insufficient evidence from which a jury reasonably could find that Conkwright's decision to file an EEOC charge was the "but-for" cause of her termination. The record contains no evidence that Fields or the employees who complained about Conkwright (Hartley, Alexander, or Douglas) were even aware of the First Charge (whether in its initial or amended form), let alone that the charge played some role in the sequence of events leading to Conkwright's termination. The record contains unrebutted evidence that Fields received numerous complaints about Conkwright's conduct and job performance, that NASBA placed Conkwright on a PIP for legitimate reasons, and that NASBA terminated her for violating the PIP. Thus, even assuming

that she could establish a *prima facie* case, Conkwright's retaliation claim would fail because she cannot show pretext.[15]

## CONCLUSION

For the reasons stated herein, the defendant's Motion for Summary Judgment will be granted and the case will be dismissed with prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[15] Although it is conceivable that Conkwright may have been able to address some of these deficiencies through appropriate discovery, she has not filed any deposition testimony, discovery responses, or contemporaneous records in support of her case, leading the court to believe that she took no depositions of witnesses or of NASBA itself. Her retaliation claim fails because of a failure of proof.